UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - X

KERVIN JEANTY,                              :
                                                        03 Civ. 8043 (WCC)
                        Plaintiff,          :

        - against -                         :           **OPINION**
                                                        **AND ORDER**
COUNTY OF ORANGE, H. FRANK BIGGER,          :
former Orange County Sheriff, sued in
his individual capacity, SGT. LEE          :
RYWALT, SGT. DANIEL A. FIGUEROA, C.O.
JASON NOWICKI, C.O. MICHAEL PFLEGER,       :
JOHN DOES I-X, sued in their individual
capacities,                                 :

                        Defendants.         :

- - - - - - - - - - - - - - - - - - - X


**A P P E A R A N C E S :**

                                    THORNTON, BERGSTEIN & ULLRICH, LLP
                                    **Attorneys for Plaintiff**
                                    15 Railroad Avenue
                                    Chester, New York 10918

CHRISTOPHER D. WATKINS, ESQ.

        Of Counsel

                                    BURKE, MIELE & GOLDEN, LLP
                                    **Attorneys for Defendants**
                                    30 Matthews Street, Suite 303A
                                    P.O. Box 216
                                    Goshen, New York 10924

MICHAEL K. BURKE, ESQ.

        Of Counsel

*Copies Mailed to Counsel of Record*

**CONNER, Senior D.J.:**

Plaintiff Kervin Jeanty commenced the present action against defendants the County of Orange (the "County"), H. Frank Bigger, former Orange County Sheriff,[1] Sergeant Lee Rywalt, Sergeant Daniel A. Figueroa and corrections officers Jason Nowicki and Michael Pfleger[2] (collectively, "defendants").[3] Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging that the defendants maliciously and sadistically subjected him to excessive force and physical abuse in violation of his rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution. In addition, plaintiff maintains that the County violated his rights under the Fourth, Eighth and Fourteenth Amendments by failing to train and supervise its corrections personnel in the appropriate use of physical force and by its policy and practice of covering-up excessive force incidents. Plaintiff also alleges state law claims against defendants including assault, battery and intentional infliction of emotional distress, as well as a claim under N.Y. CORRECT. LAW § 137(5) which precludes County correctional facilities from subjecting inmates to degrading and humiliating treatment. In the present motion, defendants move to dismiss the action in its entirety pursuant to FED. R. CIV. P. 56. Additionally, defendants move for severance of plaintiff's claims against the

---

[1] Plaintiff's claims against Sheriff Bigger, named as a defendant in his individual capacity, have been discontinued with prejudice pursuant to a signed Stipulation and Order which was So Ordered by this Court on February 17, 2004. (Burke Affm., Ex. B.)

[2] Defendants Rywalt, Figueroa, Nowicki and Pfleger are herein referred to collectively as the "individual defendants."

[3] Plaintiff also included John Does I-X in the caption of the Complaint. However, plaintiff has failed to serve, or even identify, John Does I-X, even though discovery is complete. The Court concludes that plaintiff has had ample time to identify the John Doe defendants and therefore dismisses plaintiff's claims against John Does I-X without prejudice. *See Pravda v. City of Albany*, 178 F.R.D. 25, 26 (N.D.N.Y. 1998).

individual defendants from the claims against the County or, in the alternative, separate trials pursuant to FED. R. CIV. P. 42(b). For the reasons stated hereinafter, defendants' motion for summary judgment is granted in part and denied in part. Defendants' motion for severance or, in the alternative, separate trials is denied.

## BACKGROUND

Plaintiff was arrested on January 28, 2002 and charged with Arson in the Second Degree, a Class B violent felony. (Defs. Rule 56.1 Stmt. ¶ 1.) From January 2002 through approximately December 31, 2002, plaintiff was held at the Orange County Jail (the "Jail"). (*Id.* ¶ 3.) On May 20, 2002, plaintiff was convicted by a plea of guilty to the charge of Arson in the Second Degree. (Burke Affm., Ex. C.)

Plaintiff alleges that beginning in approximately late 2002, the Jail's Special Emergency Response Team (the "SERT Team") participated in cell shakedowns during which officers, including SERT Team members, "took inmates to the shower area to perform strip searches, while other officers searched through inmates' cells." (Complt. ¶ 12.) On December 19, 2002, defendants Rywalt, Figueroa, Nowicki and Pfleger, members of the SERT Team, were assigned to and did conduct cell searches at the Jail. (Defs. Rule 56.1 Stmt. ¶¶ 5, 6.) Plaintiff maintains that on the evening of December 19, 2002, while he was housed in his cell in Housing Unit D-2, fifteen to twenty SERT Team members entered the D-2 Unit and ordered the inmates in their cells to turn on their cell lights and strip to their underwear. (Complt. ¶ 14.) Plaintiff alleges that he removed his long john underwear and sweatshirt and was then told by Rywalt and Figueroa to remove his t-shirt. (Pl. Rule 56.1 Stmt. ¶ 14.) Plaintiff responded that he would take off his t-shirt in the shower area,

which plaintiff maintains had been the procedure during other cell searches.  (*Id.* ¶ 16.)  In addition, plaintiff maintains that he believed from past experience that he might be written up if he left his cell without wearing a shirt.  (*Id.*)  Plaintiff alleges that either Figueroa or Rywalt then said, "Take your shirt off before I take it off for you" to which plaintiff again responded that he would remove his shirt at the shower area where the strip searches occurred.  (*Id.* ¶ 17; Complt. ¶ 16.)

Plaintiff alleges that Figueroa and Rywalt then ordered him to sit on his bed and put his hands behind his back, which he complied with.  (Pl. Rule 56.1 Stmt. ¶ 18.)  Plaintiff maintains that after he complied, "approximately six SERT Team members, including defendants Figueroa, Rywalt, Nowicki and Pflager [sic], stormed into his cell and, without provocation, began to punch, hit and kick [him] about his ribs, head and face."  (*Id.*)  According to plaintiff,

> Nowicki pinned [his] head into his pillow for several minutes. [Plaintiff], who is asthmatic, had difficulty breathing and began to choke.  He informed Nowicki that he had asthma and could not breathe.  In response, Nowicki momentarily released [plaintiff's] head from the pillow and said, "I'll let you have air every five seconds." Then, with the assistance of another officer, Nowicki continued to press [plaintiff's] head into his pillow.  Other officers continued to punch and beat [plaintiff] while his head was pressed into his pillow.

(*Id.*)  Plaintiff further alleges that Pfleger grabbed his left arm behind his back, pulled on it and continued to do so even though plaintiff yelled out in pain and begged the officer to stop.  (*Id.* ¶ 18.) Plaintiff maintains that even after he heard his arm "loudly pop," the officer continued to hit him. (*Id.*)  Plaintiff alleges that the officers then placed him in shackles, handcuffed him behind his back and dragged him from his cell to the day room.  (*Id.* ¶ 19.)

After the above-mentioned incident, plaintiff was transported to Arden Hill Hospital and was diagnosed as having "a spiral fracture to the humerus bone in his left arm, the bone connecting his elbow to his shoulder" and "left arm nerve damage."  (*Id.* ¶ 21; Defs. Rule 56.1 Stmt. ¶ 7.)

After investigation of the incident, a "Use of Force Review Form" was completed in the Jail

on December 19, 2002, and a "New York State Commission of Corrections Reportable Incident" was

completed and filed on December 20, 2002. (Defs. Rule 56.1 Stmt. ¶ 8 (citing Burke Affm., Exs.

H, I).) Defendants subsequently filed criminal charges against plaintiff, accusing plaintiff of

assaulting Pfleger. (Complt. ¶ 21.) Plaintiff pled guilty to a reduced charge of assault in the third

degree, a misdemeanor. (Pl. Mem. Opp. Summ. J. at 1.) Plaintiff contends that he pled guilty to a

reduced charge "[t]o avoid a longer jail sentence." (Complt. ¶ 21.) However, plaintiff notes that

there is no plea allocution and no record of factual support for his misdemeanor assault plea. (Pl.

Mem. Opp. Summ. J. at 1.) In addition, plaintiff contends that "[d]uring the relevant time,

defendants maintained a policy or practice of filing criminal charges against inmates who were

themselves subjected to excessive force by Jail personnel, usually, . . . , when the assaulted inmates

required immediate hospital care." (Complt. ¶ 21.)

Additionally, plaintiff maintains that the County "failed to properly train and supervise

defendants in the appropriate use of physical force to restrain an inmate in their charge" and that

"[t]his failure to train and supervise contributed to the beating sustained by plaintiff." (*Id*. ¶ 24.)

Furthermore, plaintiff alleges that "[d]uring the relevant time, the County . . . had a policy and

practice by which excessive force incidents by corrections staff against inmates in the Jail were

covered-up and the involved officers are [sic] not disciplined." (*Id*. ¶ 25.) According to plaintiff,

this policy and practice involved:

> under-reporting use of force incidents to oversight authorities, both within the Jail
> and without (including the New York Commission on Corrections); injuries
> sustained by inmates were left untreated for significant periods of time (to allow the
> wounds to heal as much as possible) and minimally documented; inmates were not
> allowed to grieve excessive force incidents; and, the inmates themselves were
> routinely and unjustly charged with criminally assaulting the beating officers to

4

shield those officers from any civil or criminal liability for the beating.

(*Id*.)  Plaintiff contends that this policy and practice contributed to the beating he sustained and the resulting injuries.  (*Id*.)  Plaintiff filed a grievance with the Jail related to this incident on March 17, 2003.  (Defs. Rule 56.1 Stmt. ¶ 10; Burke Affm., Ex. J.)

## DISCUSSION

I.  <u>Motion for Summary Judgment</u>

    A.  <u>Summary Judgment Standard</u>

Under FED. R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-50 (1986).  A fact is material only if, based on that fact, a reasonable jury could find in favor of the non-moving party.  *See Anderson*, 477 U.S. at 248.  The burden rests on the movant to demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant.  *See Anderson*, 477 U.S. at 255.  However, to defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist.  *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

**B.**     **Plaintiff's Fourth and Fourteenth Amendment Claims**

Defendants maintain that plaintiff's Fourth and Fourteenth Amendment claims should be dismissed because at the time of the alleged excessive force incident, plaintiff was a convicted inmate awaiting sentencing.  (Defs. Mem. Supp. Summ. J. at 2.)  Plaintiff was convicted upon his plea of guilty of Arson in the Second Degree, which carries a minimum sentence of five to fifteen years and a maximum sentence of twenty-five years, on May 20, 2002, and the alleged excessive force occurred on December 19, 2002.  (*Id.* (citing N.Y. PENAL LAW § 70.02(3)(a)).)  Therefore, defendants contend that plaintiff's excessive force claims are governed solely by the Eighth Amendment.

It is well-settled that the Eighth Amendment is the "primary source of substantive protection to convicted prisoners . . . , where the deliberate use of force is challenged as excessive and unjustified." *Whitley v. Albers*, 475 U.S. 312, 327 (1986); *see also Brown v. Doe*, 2 F.3d 1236, 1242 (2d Cir. 1993); *Ali v. Szabo*, 81 F. Supp. 2d 447, 454 n.6 (S.D.N.Y. 2000).  Numerous courts have held that a convicted plaintiff's excessive force claim, even if the plaintiff has not yet been sentenced, is governed by the Eighth Amendment.  *See Mobayed v. Pastina*, No. 94 Civ. 6386, 1996 WL 741744, at *4 (S.D.N.Y. Dec. 27, 1996) (collecting cases); *see also Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir. 1990) (concluding that there is "no reason to treat incarcerated persons whose guilt has been adjudicated formally but who await sentencing like pretrial detainees, who are detained primarily to ensure their presence at trial and who cannot be punished" and that there is "every reason to treat those awaiting sentencing the same as inmates already sentenced") (citations omitted).

In the case at bar, plaintiff pled guilty seven months prior to the alleged excessive force

6

incident. "A guilty plea is 'itself a conviction; nothing remains but to give judgment and determine punishment.'" *Berry*, 900 F.2d at 1493 n.4 (quoting *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)). Consequently, plaintiff's excessive force claim, which arose after he was convicted but before he was sentenced, is to be analyzed under the Eighth Amendment. *See Berry*, 900 F.2d at 1493 ("The critical juncture is conviction, either after trial or, as here, by plea, at which point the state acquires the power to punish and the Eighth Amendment is implicated."); *see also Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (noting that Eighth Amendment scrutiny is appropriate once the "State has complied with the constitutional guarantees traditionally associated with criminal prosecutions" and "has secured a formal adjudication of guilt"). Accordingly, plaintiff's Fourth and Fourteenth Amendments claims are hereby dismissed. *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) ("Any protection that 'substantive due process' affords convicted prisoners against excessive force is . . . at best redundant of that provided by the Eighth Amendment.").

### C.     Plaintiff's Eighth Amendment Claims Against the Individual Defendants

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment" including the "unnecessary and wanton infliction of pain." *See Rhodes v. Chapman*, 452 U.S. 337, 344-45 (1981); *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). An Eighth Amendment claim of cruel and unusual punishment based on a claim of excessive force consists of two components: (1) a subjective component which focuses on the defendant's motive for his conduct; and (2) an objective component which focuses on the conduct's effect. *See Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000).

The subjective component "requires a showing that the defendant 'had the necessary level of culpability, shown by actions characterized by 'wantonness'' in light of the particular

circumstances surrounding the challenged conduct." *Id.* at 21 (quoting *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (quoting *Wilson v. Seiter*, 501 U.S. 294, 299 (1991))). In excessive force cases, "wanton" conduct involves force that is applied "maliciously and sadistically to cause harm" as opposed to force that is "applied in a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Blyden,* 186 F.3d at 262-63. In determining whether defendants acted maliciously or wantonly, a court must take into account the following factors:

> the extent of the injury and the mental state of the defendant, as well as "the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response."

*Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (citations omitted)).

The objective component of a constitutional claim of excessive force requires that the violation be "'sufficiently serious' by objective standards." *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999). "The objective component . . . is . . . contextual and responsive to 'contemporary standards of decency.' . . . When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 8-9. However, "[i]t is well established in this Circuit that '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Although "'*de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind'" are not actionable as a violation of the Eighth Amendment, a showing of extreme injury is not required to bring an excessive force claim if the alleged conduct involved "'unnecessary and wanton infliction of pain.'" *Sims*, 230 F.3d at 21-22

(quoting *Hudson*, 503 U.S. at 10).

In the present case, plaintiff has provided sufficient evidence creating genuine issues of material fact to maintain his claim of excessive force and withstand defendants' present motion for summary judgment. Defendants' omission of any discussion regarding the objective component of plaintiff's excessive force claim leads us to believe that defendants do not dispute that the objective component of plaintiff's excessive force claim has been met or that there is at least a genuine issue of fact as to that component. Plaintiff suffered a spiral fracture of his left humerus bone as a result of the incident in question and the medical records confirm this injury. (Pl. Mem. Opp. Summ. J. at 6.) If the alleged excessive force occurred in the manner plaintiff describes, contemporary standards of decency were clearly violated. Jeanty alleges that officers rushed into his cell, pushed him down onto his bed, twisted his arm until it broke and punched and beat his head and body even after he was handcuffed and shackled. (*Id*. at 11.) Thus, plaintiff's allegations and the evidence presented satisfy the objective component of his excessive force claim.

With respect to the subjective component, plaintiff alleges that he begged the officers to stop assaulting him and that his arm made a "loud pop" as it was being twisted behind his back. Plaintiff alleges that as a result of his arm being hurt, he began to scream and cry and yelled out "You broke my arm. You broke my arm.," but that defendants continued to hit him even after his arm was broken. (Complt. ¶ 18.) Defendants maintain that the force used was done so to restore order after Jeany admittedly assaulted Officer Pfleger, and that there is no evidence supporting the assertion that the officers acted unreasonably "in using the necessary force to handcuff Jeanty while simultaneously restoring facility order." (Defs. Mem. Supp. Summ. J. at 5.) However, on a motion for summary judgment we must draw all permissible inferences in favor of Jeanty, the non-moving party; thus,

the Court assumes that even if the individual defendants did not hear the "pop" or did not realize that it resulted from the fracture of plaintiff's arm, they did hear his pleas for them to stop, but chose to ignore them. Furthermore, plaintiff contends that the individual officers continued to beat him even after he was handcuffed and shackled. This testimony creates an issue of fact as to whether the individual defendants acted with the necessary level of malice and wantonness to maintain an Eighth Amendment claim.[4] In addition, even if plaintiff first assaulted Pfleger as defendants contend, a reasonable trier of fact could conclude that the force used against Jeanty which resulted in a spiral fracture of his left arm was excessive. Courts in this district are hesitant "to dismiss complaints alleging excessive force even at the summary judgment stage if 'conflicts exist in the record regarding the degree and justification of force.'" *Atkins v. County of Orange*, 372 F. Supp. 2d 377 (S.D.N.Y. 2005) (Conner, J.) (quoting *Evering v. Rielly*, No. 98 Civ. 6718, 2001 WL 1150318, at *7 (S.D.N.Y. Sept. 28, 2001) (collecting cases)). Consequently, we conclude that the subjective requirement has been met to the extent of surviving summary judgment.

Plaintiff has presented sufficient evidence from which a reasonable trier of fact could conclude that, both subjectively and objectively, the force applied against him was in violation of the Eighth Amendment's prohibition against the "unnecessary and wanton infliction of pain." Consequently, there are genuine issues of material fact with respect to plaintiff's excessive force claim, and we must now decide whether the individual defendants are entitled to qualified immunity.

---

[4] Additionally, plaintiff offers the affidavit of Robert Everett, an inmate who witnessed the incident, to corroborate his claim of excessive force. (Pl. Mem. Opp. Summ. J. at 3; Watkins Affm., Ex. 3.) Everett testified that he saw Jeanty "on his bed with his hands behind his back" and that "the officers rushed in and started beating him." (Watkins Affm., Ex. 3.) Everett further stated that he heard Jeanty yell "'Get off me! Stop!'" and then heard a loud crack and Jeanty yell "You broke my arm! My arm is broken!" (*Id.*)

### 1.    Qualified Immunity

As a general rule, law enforcement officers are entitled to qualified immunity if: (1) their conduct does not violate clearly established constitutional rights; or (2) it was objectively reasonable for them to believe that their acts did not violate those rights.  *See Oliveira v. Mayer*, 23 F.3d 642, 648 (2d Cir. 1994), *cert. denied*, 513 U.S. 1076 (1995).  It is indisputable that freedom from the use of excessive force is a clearly established constitutional right.  The issue is whether it was objectively reasonable for the individual defendants to believe that their acts did not violate Jeanty's right to be free from the use of excessive force.  Although this inquiry requires a focus on the particular facts of the case, the Second Circuit has held that a defendant is entitled to summary judgment on qualified immunity grounds only upon a determination that a reasonable jury, viewing the evidence in the light most favorable to plaintiff and drawing all inferences in favor of plaintiff, could not find that "'it was objectively unreasonable for defendant[]' to believe he was acting in a fashion that did not clearly violate an established federally protected right."  *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987) (quoting *Halperin v. Kissinger*, 807 F.2d 180, 189 (D.C. Cir. 1986) (Scalia, J., sitting by designation)).  In addition,

> [a]lthough a conclusion that the defendant officials's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual questions must be resolved by the factfinder.  "Though '[i]mmunity ordinarily should be decided by the court,' . . . that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required . . . ."

*Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004) (internal citations omitted) (quoting *Oliveira*, 23 F.3d at 649 (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991))).

In the case at bar, the same genuine issues of material fact that preclude summary judgment on plaintiff's excessive force claim, also preclude application of the defense of qualified immunity at the summary judgment stage. To determine whether the individual defendants' actions were objectively reasonable under the circumstances, the Court must make determinations as to the underlying facts, which are currently in dispute. If a jury were to credit Jeanty's version of the incident, that "Nowicki held him face down while the other defendants punched and kicked him and twisted his left arm behind his back until it broke, while ignoring his cries of pain and complaints that he could not breathe, and then continued to hit him even after his arm was broken and he was cuffed and shackled," the jury could reasonably conclude that it was not objectively reasonable for the individual defendants to believe that their actions did not violate plaintiff's Eighth Amendment rights. (Pl. Mem. Opp. Summ. J. at 13.) Accordingly, we conclude that there are material issues of fact that preclude summary judgment on the defense of qualified immunity.

### 2. Whether Plaintiff's Conviction for Assaulting an Officer Bars His Excessive Force Claim

Defendants contend that plaintiff's conviction for assaulting an officer bars his excessive force claim. (Defs. Mem. Supp. Summ. J. at 6.) In making this assertion, defendants rely on the principle set forth in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which states,

> [i]n order to recover damages for harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance for a writ of habeas corpus.

Defendants essentially argue that a judgment in favor of plaintiff in this §1983 action would imply the invalidity of plaintiff's conviction for assaulting Officer Pfleger because his Complaint disputes

several factual issues previously decided against him by his plea of guilty to an assault. (Defs. Mem. Supp. Summ. J. at 7.) In addition, defendants argue that plaintiff is collaterally estopped from relitigating his assault claim. (*Id*.)

In response, plaintiff maintains that his misdemeanor assault conviction is not necessarily invalidated if he prevails on his excessive force claim because if a jury credits his account of what transpired, they could find that he was subjected to excessive force after he assaulted Pfelger and was already compliant. (Pl. Mem. Opp. Summ. J. at 10-11.) Plaintiff contends that "in light of the undisputed fact that defendants caused [him] to suffer a spiral fracture to his arm, a reasonable jury could conclude that the force that they applied was excessive under the circumstances," particularly where plaintiff alleges that his arm was twisted while he was being held down on his bed and was no longer a threat to the safety of any of the officers and that the individual defendants continued to punch and beat him even after he was handcuffed and shackled. (*Id*.)

As stated earlier, plaintiff pled guilty to Assault in the Third Degree, a Class A misdemeanor. (Defs. Mem. Supp. Summ. J. at 7.) A person is guilty of Assault in the Third Degree when: "with the intent to cause physical injury to another person, he causes such injury to such person or third person." N.Y. PENAL LAW § 120.00(1). Defendants argue that under *Heck* plaintiff's excessive force claim is barred by his assault conviction; we disagree. It is well-settled that if "the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Heck*, 512 U.S. at 487.

In the case at bar, a judgment in favor of plaintiff on his § 1983 action would not establish

the invalidity of his conviction for Assault in the Third Degree.[5]  *See Sales v. Barizone*, No. 03 Civ. 6691, 2004 WL 2781752, at *13-14 (S.D.N.Y. Dec. 2, 2004) ("Indeed it is 'well established than [sic] an excessive force claim does not usually bear the requisite relationship under *Heck* to mandate its dismissal.'") (quoting *Smith v. Fields*, No. 95 Civ. 8374, 2002 WL 342620, at *3 (S.D.N.Y. Mar. 4, 2002) (citing cases)).  We agree with plaintiff that a jury could reasonably conclude that even though Jeanty assaulted Officer Pfleger, after Jeanty had been subdued, he was subjected to excessive force by the individual defendants.  Accepting plaintiff's version of the altercation does not require the factfinder to conclude that Jeanty did not assault Pfleger.  Rather, the jury need only decide whether the individual defendants used excessive force against plaintiff after that assault.  Just as in *Sales*, the issue of whether the individual defendants were justified in using force against Jeanty to restrain him after he assaulted Pfleger is "analytically distinct from whether they used the appropriate amount of force" in doing so, particularly where plaintiff alleges that the individual defendants continued to beat him after he was subdued, face down on his bed, and even after he was handcuffed and shackled.  *Sales*, 2004 WL 2781752, at *14.  Accordingly, defendants' motion for summary judgment on the basis that plaintiff's assault conviction bars his §1983 action under *Heck* is denied.

---

[5] Defendants' reliance on *Dye v. Virts*, No. 03 Civ. 6273, 2004 WL 2202638, at *4 (W.D.N.Y. Sept. 28, 2004) is misplaced because the cases are factually distinguishable.  In *Dye*, plaintiff pled guilty to Assault in the Second Degree "for causing injury to defendant [] in order to prevent him from performing a lawful duty."  2004 WL 2202638, at *4.  The court dismissed plaintiff's § 1983 action because if he were to prevail, "it would necessarily negate elements of the offense for which he was convicted" for the reason that if the defendant had assaulted him and plaintiff was only defending himself, the defendant would not have been performing a lawful duty.  *Id.*  Thus, in *Dye*, plaintiff's § 1983 action would "imply that his criminal conviction based upon his guilty plea for assaulting" the defendant in that action was invalid.  *Id.*  The same cannot be said here, where plaintiff pled guilty to Assault in the Third Degree, which does not contain any elements which would be negated if plaintiff were to prevail in the present action.

### 3. Collateral Estoppel

Defendants maintain that plaintiff is collaterally estopped from relitigating his assault claim as a result of the state court proceeding in which Jeanty pled guilty to misdemeanor assault for assaulting Officer Pfleger. We disagree. It is well-established that "[u]nder New York law, if an issue is 'clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same,' that party is barred by collateral estoppel from relitigating the same issue." *Green v. Montgomery*, 43 F. Supp. 2d 239, 242 (E.D.N.Y. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 792 (2d Cir. 1994) (quotations omitted)). Two prerequisites must be met prior to application of the doctrine of collateral estoppel: "(1) there must be 'an identity of issue which has necessarily been decided in the prior action and is decisive of the present action,' and (2) there must have been 'a full and fair opportunity to contest the decision said to be controlling.'" *Mitchell v. Keane*, 974 F. Supp. 332, 339 (S.D.N.Y. 1997) (citing *Schwartz v. Public Adm'r*, 24 N.Y.2d 65, 71, 246 N.E.2d 725, 298 N.Y.S.2d 955 (1969); *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455, 482 N.E.2d 63, 492 N.Y.S.2d 584 (1985); *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995)).

However, in the case at bar, the issue of whether the individual defendants used excessive force against Jeanty was never raised in a prior action or proceeding; therefore, plaintiff cannot be collaterally estopped for raising it in the present action. When plaintiff pled guilty to misdemeanor assault, the only issue raised was whether Jeanty assaulted Officer Pfleger. The court did not find that plaintiff was not assaulted nor that plaintiff was not subjected to unnecessary and wanton infliction of pain; those issues were simply not decided by the court against plaintiff on the merits.

Accordingly, plaintiff cannot be collaterally estopped from raising his excessive force claim in the present action.

Similarly, plaintiff is not estopped from asserting his state law claims of assault, battery, intentional infliction of emotional distress and violation of N.Y. CORRECT. LAW § 137(5) against defendants because, if the incident occurred as plaintiff describes, the individual defendants subjected Jeanty to excessive force after he was already subdued and order was restored to the Jail. This issue was not raised or decided at the state court proceeding in which plaintiff pled guilty to misdemeanor assault. Accordingly, the individual defendants' motion for summary judgment is denied in all respects.

### D.     Claims Against the County

Plaintiff asserts claims against the County for "failing to train and supervise its corrections personnel in the appropriate use of physical force and by its policy and practice of covering-up excessive force incidents." (Complt. ¶ 29.)

Section 1983 applies to municipalities and other local government units. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, it is well-settled that a local government may be held liable for the constitutional torts committed by its officials only "'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Aggarwal v. New York City Health & Hosp. Corp.*, No. 98 Civ. 5063, 2000 WL 172787, at *7 (S.D.N.Y. Feb. 10, 2000) (quoting *Monell*, 436 U.S. at 694; *accord Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 142-43 (2d Cir. 1999). In other words, the County "may be held liable under Section 1983 only

when the deprivation of rights is caused pursuant to 'a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers.'" *Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 576-77 (quoting *Monell*, 436 U.S. at 690). Thus, plaintiff must "point to evidence supporting an inference that such a policy or practice exists" to establish a § 1983 claim against the County. *Richardson v. Westchester County*, No. 96 Civ. 9674, 1998 WL 373422, at *6 (S.D.N.Y. July 6, 1998). "Actions by an individual with final decision-making authority in a municipality constitute official policy for purposes of a § 1983 claim." *Anthony v. City of New York*, 339 F.3d 129, 139 (2d Cir. 2003) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)).

Additionally, it is well-recognized that the "policy or custom used to anchor liability need not be contained in an explicitly adopted rule or regulation," and that "[c]onstitutional deprivations actionable under § 1983 may be 'visited pursuant to governmental "custom" even though such custom has not received formal approval through the body's official decisionmaking channels.'" *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992) (quoting *Monell*, 436 U.S. at 691). Nevertheless, a plaintiff must prove that the allegedly violative practice is "persistent and widespread," and that the "actions of subordinate city employees" are "so manifest as to imply the constructive acquiescence of senior policy-making officials." *Sorlucco*, 971 F.2d at 870-71. "Conclusory allegations of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a *Monell* claim, absent evidence to support such an allegation." *McAllister v. New York City Police Dep't*, 49 F. Supp. 2d 688, 705 (S.D.N.Y. 1999). Moreover, for a plaintiff's claim of custom or policy to survive summary judgment review, there necessarily must be evidence of the complained-of activity by defendants in similar circumstances outside of the

present case. *See Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 122 (2d Cir. 1991) (stating that "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy").

Defendants contend that plaintiff is unable to sustain his § 1983 claim against the County because Jeanty "cannot establish the existence of any unconstitutional policy, custom or practice that caused him to be allegedly exposed to excessive force," nor can plaintiff produce any evidence that the County "had ever established a policy or custom of using excessive force against inmates, failing to report such incidents, denying inmates appropriate medical attention, or the right to grieve alleged prisoner abuse." (Defs. Mem. Supp. Summ. J. at 10.)

### 1.     Failure to Train and Supervise

The Supreme Court has held that a municipality will be liable for inadequate training or supervision of its employees "only where the failure to train amounts to deliberate indifference to the rights" of those with whom municipal employees will come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The Second Circuit set forth the following three-part test for determining whether a municipality's failure to train or supervise rises to the level of deliberate indifference:

> First, the plaintiff must show that a policymaker knows "to a moral certainty" that her employees will confront a given situation. . . . Thus, a policymaker does not exhibit deliberate indifference by failing to train employees for rare or unforeseen events. Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. . . . [Third,] the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.

*Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992) (citations omitted). "Alternatively,

18

where the municipality, in the face of an objective obvious need for more or better training or supervision, fails to take action, a custom or policy may be inferred." *Fincher v. County of Westchester*, 979 F. Supp. 989, 1007 (S.D.N.Y. 1997) (Conner, J.). However, to defeat a motion for summary judgment on a § 1983 claim, a plaintiff must do more than "simpl[y] recit[e] . . . a failure to train municipal employees." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993). A plaintiff must produce "some evidence that policymakers were aware of a pattern of [unconstitutional conduct] but failed to [respond]." *Walker* 974 F.2d at 300.

In the case at bar, plaintiff has demonstrated that the County's failure to train or supervise rises to the level of deliberate indifference sufficiently to survive summary judgment. The County's policymakers knew "to a moral certainty" that its employees, particularly the SERT Team members, would confront situations in which force may be necessary to subdue non-compliant inmates. The need for the use of force against inmates who are acting out is clearly not a rare or unforeseen event; thus, it is important for the County to train its officers to use reasonable force under the circumstances. In addition, plaintiff has established that there is a history of officers mishandling situations in which force is necessary to subdue an inmate as evidenced by plaintiff's reference to several incidents of alleged excessive force. (Pl. Mem. Opp. Summ. J. at 13-14.) Plaintiff presented the testimony and records of several inmates who were allegedly subjected to excessive force prior to the December 19, 2002 incident in which plaintiff was injured.[6] (Pl. Mem. Opp. Summ. J. at 13-

_____

[6] Defendants argue that the claims of Catherine McCormick, Robert Ocasio and Leroy Thomas should not be permitted to be introduced as evidence against the County to establish a policy or practice because they are "merely complaints and not findings of excessive force" and there is no proof that the County was aware of the complaints prior to Jeanty's alleged incident. (Defs. Mem. Supp. Summ. J. at 14.) We disagree because, at the very least, the complaints and whether the County knew of them is an issue of fact which is more appropriately decided at trial. Although defendants contend that the County was unaware of Thomas's excessive force claim

14.) Thus, at the very least, there is an issue of fact as to whether there is a history of officers mishandling situations such as the one at issue. While several excessive force incidents may not necessarily establish a practice that is so "persistent and widespread" as to support a finding of constrictive acquiescence, we believe that this is a question of fact which is more appropriately decided at trial. Moreover, plaintiff has also raised a material issue of fact as to whether there was an "objective obvious need" for more or better training or supervision and that the County failed to take action; thus, it may be possible for a custom or policy to be inferred under the circumstances. Consequently, summary judgment is inappropriate.

### 2. Policy and Practice of Covering-Up Excessive Force Incidents

However, plaintiff's claim that the County had a policy and practice of covering-up excessive force incidents is not sufficiently supported in the factual record to impose *Monell* liability. While it is not necessary for Jeanty to identify an express rule or regulation because a plaintiff is permitted to "show instead a 'persistent or widespread' practice amounting to a 'custom or usage with the force of law,' or a 'failure to investigate' such that the conduct becomes an 'accepted practice,' [he] cite[s] to no evidence at all in the record" to support this claim, other than his conclusory statement that the

---

until December 19, 2002, plaintiff asserts that the County did in fact know of other inmates' excessive force complaints, including Thomas's complaint, prior to the incident in question and offers evidence in support of this assertion; thus, there is a genuine issue of fact. (Defs. Reply Mem. Supp. Summ. J. at 6; Pl. Mem. Opp. Summ. J. at 13-14.) Moreover, although defendants contend that McCormick's testimony should not be permitted to support plaintiff's *Monell* claims because her excessive force complaint did not involve SERT Team members, we find this distinction to be questionable. (Defs. Reply Mem. Supp. Summ. J. at 5-6.) Plaintiff's Complaint alleges a failure to train and supervise "corrections personnel" in the appropriate use of physical force and makes no reference specifically to SERT Team members. (Complt. ¶ 29.) Thus, McCormick's complaint is relevant to the case at bar, and the weight it should be accorded in determining Jeanty's *Monell* claim is a question for the factfinder.

County had a policy and practice of covering-up excessive force incidents. *Hickey v. City of New York*, No. 01 Civ. 6506, 2004 WL 2724079, at *21 (S.D.N.Y. Nov. 29, 2004) (internal citations omitted); *see also Dwares*, 985 F.2d at 100 ("The mere assertion, however, that a municpality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."). It is well-settled that conclusory allegations are insufficient to defeat a motion for summary judgment. *See Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.").

In addition, although plaintiff asserts that the County did not properly investigate his claim of excessive force, "a single incident without more does not create a genuine issue of material fact as to whether such conduct has become an 'accepted custom or practice.'" *Hickey*, 2004 WL 2724079, at *21 (citing *Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir. 1980)). Accordingly, plaintiff's § 1983 claim based on the assertion that the County had a policy and practice of covering-up excessive force incidents is dismissed.

Moreover, plaintiff has presented no evidence in support of the allegations that the County and its Sheriff's Department had a policy and practice of filing criminal charges against inmates who were exposed to excessive force or that the injuries of inmates were left untreated for significant amounts of time to allow wounds to heal. (Defs. Reply Mem. Supp. Summ. J. at 4.) In fact, the evidence demonstrates the contrary to be true. First, plaintiff has offered no examples of inmates other than himself who had criminal charges filed against them after they had allegedly been subjected to excessive force. Notably, McCormick, Ocasio and Thomas, whose testimony plaintiff plans to present in support of his *Monell* claims, were not criminally charged after being allegedly

subjected to excessive force. (*Id*.) Furthermore, plaintiff has failed to set forth any evidence demonstrating that inmates were left untreated to allow wounds to heal. Plaintiff himself was immediately seen by the Jail medical staff and treated at Arden Hill Hospital Emergency Room. (*Id*.) Consequently, these claims must be dismissed.

Similarly, plaintiff's claim that the County had a policy and practice of under-reporting use of force incidents to oversight authorities is unsupported by the record. (*Id*. at 5.) With respect to Jeanty's incident, both a "Use of Force Form" and "New York State Commission of Corrections Report" were completed, which plaintiff admits, and plaintiff has offered no evidence demonstrating that excessive force incidents were not reported. Consequently, we agree with defendants that this policy claim must be dismissed.

Additionally, although plaintiff alleges that the County had a policy or custom of not permitting inmates to grieve excessive force incidents, plaintiff lacks standing to assert this claim because he was permitted to grieve his excessive force claim, and in fact did so. Accordingly, all claims against the County must be dismissed except plaintiff's claim relating to the County's alleged failure to train and supervise corrections personnel.

**II.     Severance**

Defendants move pursuant to Fed. R. Civ. P. 21 for severance of plaintiff's claims against the individual defendants from the *Monell* claims asserted against the County or, in the alternative, that the Court order separate trials pursuant to Fed. R. Civ. P. 42(b). (Defs. Mem. Supp. Summ. J. at 15.) Plaintiff maintains that neither severance, nor separate trials, is warranted. (Pl. Mem. Opp. Summ. J. at 15.)

Rule 20(a) provides that "[a]ll persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Rule 20(b) provides that a court "may order separate trials or make other orders to prevent delay or prejudice." Additionally, Rule 21 "permits a court to add or drop parties to an action when doing so would serve the ends of justice and further the prompt and efficient disposition of the litigation." *German by German v. Fed. Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1400 (S.D.N.Y. 1995). In order to determine whether severance is appropriate, courts generally consider:

> (1) whether the issues sought to be tried separately are significantly different from another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted and (4) whether the party requesting the severance will be prejudiced if it is not granted.

*Id.* (citations omitted).

In addition, Rule 42 "permits a court to order separate trials of a plaintiff's claims when doing so will be expeditious and serve the interests of judicial economy." *German by German*, 896 F. Supp. at 1400 n.6. Thus, "'[a] [c]ourt may order separate trials in order to (1) avoid prejudice; (2) provide for convenience; or, (3) expedite the proceedings and be economical. Only one of these conditions need be met for the [c]ourt to order a separate trial.'" *Pavlovich v. City of New York*, No. 91 Civ. 5030, 1992 WL 230472, at *2 (S.D.N.Y. Aug. 31, 1992) (quoting *Ismail v. Cohen*, 706 F. Supp. 243, 251 (S.D.N.Y. 1989), *aff'd in part, rev'd in part*, 899 F.2d 183 (2d Cir. 1990) (citations omitted)). The decision of whether to sever parties or claims from an action or order separate trials is left to the broad discretion of the district court. *See, e.g., Amato v. City of Saratoga Springs*, 170

F.3d 311, 316 (2d Cir. 1999); *German by German*, 896 F. Supp. at 1400 (citations omitted).

Additionally, we note that "the presumption is that all claims in a case will be resolved in a single trial, and 'it is only in exceptional circumstances where there are special and persuasive reasons for departing from this practice that distinct causes of action asserted in the same case may be made the subject of separate trials.'" *Martinez v. Robinson*, No. 99 Civ. 11911, 2002 WL 424680, at *2 (S.D.N.Y. Mar. 19, 2002) (quoting *Lewis v. Triborough Bridge and Tunnel Auth.*, No. 97 Civ. 0607, 2000 WL 423517, at *2 (S.D.N.Y. Apr. 19, 2000) (quoting *Miller v. Am. Bonding Co.*, 257 U.S. 304, 307 (1921))).

Defendants contend that severance of the excessive force claims against the individual defendants from the policy and practice claims against the County is warranted because plaintiff's excessive force claim "involve[s] different witnesses, different factual circumstances, different claimed uses of force, different claimed injuries, different correctional officer defendants involved, and different claimed incident dates" from the alleged excessive force claims which would be presented by other witnesses to establish plaintiff's *Monell* claim. (Defs. Mem. Supp. Summ. J. at 16.) Defendants further maintain that failure to sever the claims would result in prejudice to the individual defendants because the proposed witnesses on the *Monell* claim will be testifying about incidents of alleged excessive force in which the individual defendants had no part. (*Id.*) Additionally, defendants acknowledge that plaintiff has alleged claims based upon the same general facts and theories of law, but contend that this alone is insufficient to require the claims against the individual defendants and the County to be tried together. (*Id.*) Plaintiff, however, contends that severing his claims against the individual defendants from his claims against the County, or holding separate trials, "would waste judicial resources and further delay resolution of plaintiff's claims."

(Pl. Mem. Opp. Summ. J. at 16.)

Although we agree with defendants that the individual defendants may be prejudiced[7] by the testimony of witnesses in support of the *Monell* claim, we believe any such prejudice could be cured by "carefully crafted" limiting instructions. *See, e.g., Ingles v. City of New York*, No. 01 Civ. 8279, 2005 WL 1354028, at *1 (S.D.N.Y. June 7, 2005); *Pavlovich*, 1992 WL 230472, at *3; *Rosa v. Town of E. Hartford*, No. 00 Civ. 1367, 2005 WL 752206, at *5 (D. Conn. Mar. 31, 2005).

> [C]ontrary to defendants' assertion, the presence of the *Monell* claim in this action does not create an order of proof that favors bifurcation. That is, the mere fact that the jury might return a verdict on [plaintiff]'s § 1983 claim in favor of the police officers and thereby avoid its consideration of the *Monell* claim does not compel bifurcation. There are less burdensome ways to deal with that situation, including use of a special verdict form, a well-adapted jury charge, and carefully crafted limiting instructions. Contrary to defendants' assertions, separate trials would not be efficient and would inconvenience the court, the jury, and the plaintiff.

*Rosa*, 2005 WL 752206, at *5. In addition, severance of the claims or separate trials would not further convenience or be conducive to "expedition and economy;" rather, it would require the Court to try two cases that are essentially the same except for additional evidence which might be presented in support of plaintiff's *Monell* claim. Such a result, would clearly not further Rule 42(b)'s goals of efficiency and convenience. *See Ingles*, 2005 WL 1354028, at *1. Accordingly, defendants' motion for severance or, in the alternative, an order granting separate trials is denied.

## CONCLUSION

For all of the foregoing reasons, the motion for summary judgment made by defendants the County of Orange (the "County"), Sergeant Lee Rywalt, Sergeant Daniel A. Figueroa and corrections

---

[7] Even though we acknowledge that the evidence plaintiff plans to present in support of his *Monell* claim may be prejudicial to the individual defendants to some extent, we do not think it will rise to the level of being "unduly prejudicial" so as to warrant severance or separate trials.

officers Jason Nowicki and Michael Pfleger (the "individual defendants") is granted in part and denied in part. All claims asserted against John Does I-X are hereby dismissed without prejudice, and plaintiff's Fourth and Fourteenth Amendment claims are dismissed with prejudice. The individual defendants' motion for summary judgment is denied in all other respects. The County's motion for summary judgment is denied only with respect to plaintiff's claim relating to the County's failure to train and supervise corrections personnel in the appropriate use of physical force, but granted with respect to all other claims asserted against the County in plaintiff's Complaint. Defendants' motion for severance or, in the alternative, an order granting separate trials is denied.

SO ORDERED.

Dated: White Plains, New York
     July 27, 2005

                                                _William C. Conner_
                                          Sr. United States District Judge